VAN WYCK *v.* WRIGHT and JOHNSON, 18 Wend. 157.

Case not reported in Supreme Court, but opinion of that court by Nelson, J., 18 Wend. 162–4. See also *Jackson* ex dem. *Johnson* v. *Tallmadge*, 4 Cow. 450, post. 128.

*Deed; Map; Survey under Authority of Surveyor General; Practical Locations or Land Marks.*

EJECTMENT by Van Wyck against Wright.and Johnson, for a tract of land in Tompkins county. Both parties claimed title to the land in question under Robert C. Johnson, grantee of Greenleaf, the original patentee from the state; the plaintiff claiming the disputed tract as grantee of the southwest quarter section, and the defendant as grantee of the northwest quarter section of township No. 10. The defendant claimed title under his deed, according to the line on the *map* filed in the Surveyor General's office, by whose authority the town and section lines were run, and the map made and filed in his office in 1791. The plaintiff claimed to recover the disputed tract according to a line actually run by a *sub-surveyor*, acting under the orders of the Chief Surveyor, employed by the Surveyor General. The *sub-surveyor*, and his assistants under these directions, proceeded to survey the lines of the township No. 10, and its sections, but instead of pursuing the lines as given to them, proceeded some forty chains further on the north course than they should have done. The mistake having been discovered by the surveyor after a part of the section line had been thus run, and the trees marked and *blazed*, &c., the Chief Surveyor sent orders to Sabin the deputy, to correct the line as run, and to conform it to the proper course. Sabin, instead of going back to the point of departure beyond the true line, made an *offset* from the line as he had run it already, to the true line, and then proceeded to run and mark the residue, according to the map in the Surveyor General's office. That map was made out upon the supposition that the *whole* line had been

run correctly. This produced a difference between that part of the line on the map, and the actual line as marked on the land. This plat constituted the land in question.

In the year 1799, Robert C. Johnson, who had become the grantee of the township by conveyance from Greenleaf, was apprised of this mistake by a surveyor named Pumpelly, who then under Johnson's directions proceeded to run out the true line according to the map, and to obliterate the old one. In 1806 or 1807, a tenant took possession up to the map line, under title derived from a son of Johnson. Van Wyck, who claimed according to the actual Sabin line, under a deed from Johnson, before the correction was made, some time after commenced an action of ejectment against the tenant, which resulted in a verdict in favor of the tenant. The disputed line however remained unsettled, and tenants from 1806 or '7, occupied part of the tract, claiming title. Van Wyck, however, after the termination of his action of ejectment, gave directions to his agent not to sell any more lands *north* of the map line, and for several years previous, did not pay the taxes on the land. In 1820, Wright, one of the defendants, having entered into possession of part of lot No. 46, (as claimed by Van Wyck,) and occupying it to the map line, Van Wyck, in 1830, commenced this suit against him. His landlord, Johnson, the other defendant, became a party to defend the suit.

At the trial, the counsel for the plaintiff desired the judge to charge the jury that "*the actual marked lines* on the land, and *not the map*, must control in the decision of the case," but the judge declined so to do, and charged that "if the line run by Pumpelly, (the *map line*,) was a mere continuation of the Sabin line, from the *jog or offset*, it was the same thing as if it had been run or continued by Sabin himself, and would then be true line, and control the parties in this suit." Exception and verdict for defendant according to the charge. On motion for a new trial,

The Supreme Court refused a new trial. Nelson, J., delivering the opinion of the court, (see 18 Wend. 162–4,) says, "without going into a minute examination of the facts disclosed in this case, it is entirely clear that the line claimed by the plaintiff to be the true east and west line, between the

quarter sections of township No. 10, was originally run and marked through mistake, and was obliterated and abandoned when the mistake was discovered."—" But it is said that the (Sabin) line is clear and perfect through the sections of lot No. 10, and that the purchasers of these sections are bound by it; though as a line *dividing east and west* this tier of townships on the tract, and for which purpose it was run, it was also abandoned.

"It was not understood or believed at the trial of *Jackson* v. *Johnson*, 4 Cow. 450,* that this line of itself was conclusive upon the parties, nor is any such opinion intimated or

---

* By the case of *Jackson* v. *Johnson*, 4 Cow. 450,) as cited above by Justice Nelson, is meant the case there reported under the correct title of *Jackson* ex dem. *Johnson* and others v. *Tallmadge*, 4 Cow. 450. The same question on the same facts, in substance there arose.

That was an action of ejectment by Johnson, the defendant in this case, to recover a part of the same disputed premises against a defendant claiming under the *ground* line. The cause was tried in 1823, before Nelson, Circuit Judge, who *then* charged the jury in *favor of* the *ground* line and against the *map* line, and the jury found a verdict for the defendant. On the motion for a new trial, the following opinion was delivered by

" Savage, Ch. J., who after stating the facts, adverted to and relied on *Jackson* v. *Freer*, (17 J. R. 31.) He said the question there as stated by Spencer, Ch. J., was " which shall prevail, the actual location of the lots on the ground, by marking and numbering trees at the corners, and by marking the lines of the lots ?—or, the courses and distances which the *map* represents the lots as entitled to?" The court decided in favor of the actual location. The *survey* was considered as the *act of the parties*, though made by the agent of the Surveyor General, as in this case. In *Jackson* v. *Ogden*, (7 J. R. 241,) it was said that where the map and survey do not agree, a practical location, *acquiesced in*, is entitled to great weight.

"In this case, the evidence of acquiescence in the location by the lessors of the plaintiff, was not very conclusive ; and further testimony on it might have been satisfactory. Such was offered after the counsel had commenced summing up, but rejected. It was, doubtless, discretionary with the judge to receive or reject it ; and I can not say that his discretion was not properly exercised. From the case as it stands, I think a new trial should be refused." New trial denied.

---

☞ It is believed that the learned reader who shall attentively examine the facts and circumstances of the foregoing case, and the cases of *Jackson* v. *Hunter*, 1 J. R. 495 ; *Jackson* v. *Cole*, 16 id. 257 ; and *Jackson* v. *Freer*, 17 id. 29 ; will hesitate before he assents implicitly to the conclusions of the Chancellor in *Van Wyck* v. *Wright* and *Johnson*. In one thing he is most cer-

expressed by the Chief Justice at bar. It was decided upon the ground frequently considered and approved by this court, that where the *marked* line has been erroneously run, and the one on the *map* and in the *field* book is correct, and there has been an actual location and possession for years, according to the *ground* line, acquiesced in by the adjoining owners, the latter shall not be allowed even to correct the line, and thereby break up such line and deprive the party of his improvements, and this principle aside from any other, is conclusive against the plaintiff. For, if a location and possession acquiesced in for years, upon an *erroneous* line of marked trees, will prevail over the true one given by the map and field book, can it be pretended that a like *possession* and *acquiescence* according to the *true* line of the map and field book, will not prevail over an *erroneous ground line.* The defendant, Wright, has been in possession upward of 12 years under this line." A new trial was accordingly denied, and the plaintiff now brought error.

The Court of Errors *reversed* the judgment of the Supreme Court, Walworth, Chancellor, delivering the only opinion reported. He says, in the course of it, after stating that the only important question in the case is: " Whether the deed from Robert C. Johnson, to Suydam, (in 1795,) from whom the plaintiff derives title, conveyed the southwest quarter of township No. 10, as the same was actually run and marked upon the land *at the time of conveyance,* or only conveyed it as it would have been run if Sabin *had run the line back* from where he made the offset, $6\frac{1}{4}$ miles west of this section ?"

" What would be the first legal resort of the grantee (Suy-

---

tainly mistaken. He asserts that the case of *Jackson* v. *Hunter* was *overruled* in the case of *Jackson* v. *Cole.* But is this so ? Let Spencer, Ch. J., who delivered the opinion of the court, decide the question. He says, (16 J. R. 263,) " I am free to declare that upon further consideration, I am satisfied that the opinion delivered in *Jackson* v. *Hunter,* can not be supported; and that it was founded upon too narrow a view of the act; (act in relation to military lands of 6th April, 1790.) I am not authorized to say that *my brethren* fully and explicitly renounce the opinion delivered in *Jackson* v. *Hunter,* though I understand them to incline to consider it incorrect. *They do not consider this case as requiring them expressly to overrule that case.*"

17

dam) and those claiming under him, to ascertain and locate the premises thus granted? Certainly it was to ascertain if the two quarter sections granted were actually run out and marked or located upon the land at the time of the conveyance, bounded in the manner described in the deed. And certainly there can be no doubt whatever, that if the purchaser had gone to the land at the time he took the conveyance, or before, and such is the legal presumption as to the *location calls* in the deed, he would have found every quarter or section adjoining the two conveyed to him actually located on the land, and those on the north and east and West, with their corners distinctly marked on the Sabin line."—"It would have been necessary for him to travel $6\frac{1}{4}$ miles from the lands granted to him, to have found the *obliterated* corner upon the north line of No. 6, even if he had had an intimation that there was a mistake. Such a constructive notice of a mistake it would be very unreasonable to enforce against the settlers in a new country."—"Again; this quarter or section had been actually subdivided into lots bounding upon the Sabin line before the conveyance to Suydam." "The other undivided half of this section was conveyed to the plaintiffs with express reference to it."

Judgment *reversed* 12 to 6.